No. 16-5248

# UNITED STATES COURT OF APPEALS
# FOR THE
# DISTRICT OF COLUMBIA CIRCUIT

**ORAL ARGUMENT IS REQUESTED**

---

SAIFULLAH PARACHA,

Petitioner,

v.
BARACK H. OBAMA,

et al.,

Respondents.

---

Appeal from the
United States District Court for the District of Columbia,
Civil Action 2004-cv-02022-PLF

## BRIEF FOR APPELLANT

GAILLARD T. HUNT
Attorney for Appellant
(D.C. Bar No. 089375)
10705 Tenbrook Drive
Silver Spring, Maryland 20901
(Not admitted in Maryland)
301-530-2807
gthunt@mdo.net
(Fax: 301-564-6059)

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### Parties

Appellant Saifullah Paracha is an individual alien friend, a national of Pakistan, a country allied with the United States. He has been incarcerated by agents of the United States at Guantanamo Bay, Cuba, since 2004.

Respondents are all officers of the United States sued in their official capacities.

Assoicated Press, New York Times, and USA Today intervened with motions objecting to unnecessary classification of documents. Their interest is moot and they have no involvement in this appeal.

### Rulings

The ruling appealed from is the U.S. District Court's ruling of June 16, 2016, docket 439, submitted in the Appendix.

### Related cases

Paracha's previous appeals[1] to this Court are not related to this present appeal, which deals only with the bills of attainder passed by Congress inaccurately labeling him a terrorist.

Likewise the various appeals dealing with other prisoners at

---

[1] They acquired eight docket numbers: 05-5194, 05-5333, 05-5334, 05-5211, 06-1038, 06-1117, 06-5379, and 08-5238.

Guantanamo are not related to this bill of attainder issue—with the arguable exception of *Kiyemba v. Obama*, 605 F.3d 1046 (D.C. Cir. 2010) (*Kiyemba III*), discussed below, section V.

**TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES **ii**

TABLE OF AUTHORITIES **v**

JURISDICTIONAL STATEMENT **1**

STATEMENT OF ISSUES PRESENTED FOR REVIEW **2**

STATUTES AND REGULATIONS **2**

STATEMENT OF THE CASE **3**

SUMMARY OF THE ARGUMENT **6**

STANDING **6**

ARGUMENT **7**

I. THE POST-*LUJAN* RESTRICTION OF STANDING TO ONLY PLAINTIFFS WITH IMMEDIATE PERSONAL INTERESTS CONFERS STANDING ON ANYONE AGAINST WHOM THE GOVERNMENT HAS TAKEN ACTION. **7**

II. PARACHA'S OBJECTION TO BILLS OF ATTAINDER IS A SEPARATION OF POWERS ARGUMENT OF THE SORT THAT ALWAYS MAY BE RAISED BY AN AFFECTED INDIVIDUAL. **10**

III. IF READ TO STRIP THE COURTS OF JURISDICTION TO REVIEW THESE BILLS OF ATTAINDER, THE JURISDICTIONAL LIMITATIONS IN 28 U.S.C. 2241(e) WOULD BE INVALID. **13**

IV. 28 U.S.C. 2241(e) NEED NOT AND MUST NOT BE READ TO STRIP THE COURTS OF POWER TO STRIKE DOWN THESE BILLS OF ATTAINDER. **18**

V. THE CHALLENGED STATUTES ARE VOID AS BILLS OF ATTAINDER. **20**

RELIEF SOUGHT **26**

## TABLE OF AUTHORITIES

**Cases**

*Bartlett v. Bowen,* 816 F.2d 695, 259 U.S. App. D.C. 391 (D.C. Cir. 1987) **16, 19**

*Battaglia v. General Motors,* 169 F.2d 254 (2d Cir. 1948) **15**

*Bismullah v. Gates,* 551 F.3d 1068 (D.C. Cir. 2009) **20**

*Bond v. United States,* 564 U.S. 211, 131 S. Ct. 2355, 180 L. Ed. 2d 269 (2011) **10**

*Boumediene v. Bush*, 553 U.S. 723, 128 S. Ct. 2229, 171 L. Ed. 2d 41 (2008) **12, 20**

*Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986) **19**

*Cummings v. the State of Missouri*, 71 U.S. (4 Wall.) 277, 323, 18 L.Ed. 356, (1866) **6**

*Davis v. U.S. Sentencing Commission,* 716 F.3d 660 (D.C. Cir. 2013) **9**

**Foretich v. United States,* 351 F.3d 1198 (D.C. Cir. 2003) **6, 21**

*INS v. Chadha,* 462 U.S. 919, 103 S. Ct. 2764, 77 L. Ed. 2d 317 (1983) **11, 12**

*Johnson v. Robison,* 415 U.S. 361 (1974) **18**

*Kiyemba v. Obama*, 605 F.3d 1046 (D.C. Cir. 2010) **1, 20**

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992 ) **7**

*Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1803) **18**

*Nixon v. GSA,* 433 U.S. 425 (1977) **22**

*Pullman-Standard v. Swint*, 456 U.S. 273 (1982) **25**

*Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, 827 F.3d 333 (4th Cir., July 1, 2016) **25**

*Royce v. Hahn,* 151 F.3d 116, 118 (3d Cir. 1995) **9**

**United States v. Brown,* 381 U.S. 437, 85 S. Ct. 1707, 14 L. Ed. 2d 484 (1965) **9, 12**

*United States v. Dillon,* 738 F.3d 284 (D.C. Cir. 2013) **25**

*United States v. Emor,* 785 F.3d 671 (D.C. Cir., 2015 **7**

*United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L. Ed. 519 (1872) **14**

**United States v. Lovett,* 328 U.S. 303, 66 S. Ct. 1073, 90 L. Ed. 1252 (1946) **9**

*United States v. McDade*, 699 F.3d 499, 505 (D.C. Cir. 2012) **26**

*Webster v. Doe*, 486 U.S. 592, 603 (1988) **19**

*Weinberger v. Salfi,* 422 U.S. 749 (1975) **19**

*Zivotofsky v. Kerry,* ____U.S. ___, 135 S.Ct. 2076, 192 L. Ed. 2d 83 (2015) **1**

**Statutes**

123 Stat. 2612 **20**
124 Stat. 4374 **20**
28 U.S.C. 2241(e) **13**
28 U.S.C. 1291 **1**
28 U.S.C. 1331 **1**
28 U.S.C. 2201, 2202 **1, 14, 15, 18, 20**
28 U.S.C. 2241(e)(2) **20**
64 Stat. (1950) **23**
68 Stat. (1954) **23**

Consolidated Appropriations Act of 2016, Pub. L. 114-113 **3**
Continuing resolution passed December 9, 2016, Pub. L. 114-254, Section 101, Division A **3**
Continuing resolution passed September 29, 2016, Pub. L. 114-223 **3**
December 11, 1861, joint resolution **23**
Detainee Treatment Act of 2005 (10 U.S.C. 801 note), 119 Stat. 2739 **20**
July 6, 1812, 2 Stat. 777 **23**
June 19, 2014, 160 Cong. R. H5518 **25**
National Defense Authorization Act for Fiscal Year 2016, Pub. L. 114-92 **2**

**Rules**

F. R. Civ. Proc., Rule 54(b) **5**

**Constitutions**

Articles of Confederation **23**
Constitution, Art. I, Section 7 **11**
Constitution, Article 6, clause 2 **14**
Constitution, Article I, Section 9, clause 2 **13**
Constitution, Article I, Section 9, clause 3 **2, 5, 6**
Constitution, Section 1. of Article III **13**
Constitution, Section 2. of Article III **13**

**Other Authorities**

Clinton, Robert N., *A Mandatory View of Federal Court Jurisdiction*, 132 U. Pennsylvania L. Rev. 741 (1984) **17**
Cotton, Tom, Sen., Senate Armed Services Committee Hearing on the Guantanamo Detention Facility and the Future of U.S. Detention Policy, February 5, 2015, transcript 56:15-18 **24**
Eisenberg, Theodore, *Congressional Authority to Restrict Lower Federal Court Jurisdiction*, 83 Yale L. J. 498 (1974) **17**
Fallon, Richard H., Jr., *Jurisdiction-Stripping Reconsidered*, 96 Virginia L. Rev. 1043, 1134 (2010) **16**
Friedman, Barry, *A Different Dialogue: The Supreme Court, Congress and Federal Jurisdiction,* 85 Northwestern Univ. L. Rev. 1 (1990) **15**

Hart, Henry M., Jr., *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic,* 66 Harvard L. Rev. 1362 (1953) **14**

Krammer, Arnold, *Nazi Prisoners of War in America* (New York: Stein & Day, 1979) **24**

Nadler ,Jerrold, Rep., April 29, 2015, Cong. Rec. H2604 **25**

Redish, Martin H. and Curtis E. Woods, *Congressional Power to Control the Jurisdiction of Lower Federal Courts*, 124 U. Pennsylvania L. Rev. 45 (1975) **17**

Silberhorn, Thomas, May 29, 2009, *Washington Post* **10**

Vladeck, Stephen I., Boumediene's *Quiet Theory: Access to the Courts and the Separation of Powers*, 84 Notre Dame L. Rev. 2107 (2009) **17**

Wikipedia, "German prisoners of war in the United States" **24**

Young, Gordon G., *A Critical Reassessment of the Case Law Bearing on Congress's Power to Restrict the Jurisdiction of the Lower Federal Courts*, 54 Maryland L. Rev. 132, 133 n. 4 (1995) **15**

*Authorities upon which we chiefly rely are marked with asterisks.

**GLOSSARY**

No distinctive terms are used in this brief.

**JURISDICTIONAL STATEMENT**

The jurisdiction of the U.S. District Court for the District of Columbia rest on the general federal question jurisdiction, 28 U.S.C. 1331, the declaratory judgment statute, 28 U.S.C. 2201, 2202, and other provisions cited in paragraph 3. of Paracha's amended petition. This challenge to the bills of attainder was filed as a motion in petitioner's habeas corpus challenge to his confinement primarily to avoid splitting of causes of action and to conserve judicial resources. Nevertheless, petitioner does not waive whatever pendent jurisdiction he may be entitled to as a habeas petitioner under the habeas statute, as *Kiyemba v. Obama* 561 F.3d 509, 512-513 (D.C. Cir. 2009) (*Kiyemba II*) correctly interpreted *Boumediene, infra,* to have restored all of habeas, along with the powers ancillary to that writ.

The jurisdiction of this Court rests on the general authority to review decisions of the District Court, 28 U.S.C. 1291. The separate finality and appealability of the denial of relief from the bills of attainder rests on the District Court's July 29, 2016, order and opinion, docket 444 and 445, Appendix 116-119, under Rule 54(b).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Are the listed statutes, which label appellant Paracha and the other prisoners at Guantanamo as terrorists, bills of attainder and legislative determinations of guilt, and therefore void under the provision that "No Bill of Attainder or ex post facto Law shall be passed" (Article I, Section 9, clause 3 of the Constitution)?

Does appellant Paracha, as one of the Guantanamo prisoners the bills of attainder label as a terrorist, have standing to object to being so labeled, and does he have standing to object to the breakdown of the separation of powers involved in such a legislative finding of guilt?

## STATUTES AND REGULATIONS

The statutes challenged as bills of attainder are the provisions on appropriation and authorization bills which apply only to prisoners held at Guantanamo Bay, Cuba.

The provisions in effect when the motion was first filed are listed in the Appendix at 13 and 26-27. They are reproduced there at 28-44.

The additional provisions in effect when the motion was updated in January 15, 2016, are reproduced at Appendix 52-91. These include sections of the National Defense Authorization Act for Fiscal Year 2016, Publ L.

114-92, and the Consolidated Appropriations Act of 2016, Pub. L. 114-113.

On March 3, 2016, the government filed an analysis of the challenged provisions then in effect. That is reproduced at Appendix 92-107.

The continuing resolution passed September 29, 2016, Pub. L. 114-223, continued until December 9, 2016, the appropriations in Pub. L. 114-113 and other Acts, "under the authorizations and conditions provided in such Acts," and added Section 512 of Division A, reproduced at Appendix 108-109.

The continuing resolution passed December 9, 2016, Pub. L. 114-254, Section 101, Division A, changed the expiration date of Pub. L. 114-223 to April 28, 2017, thereby extending the restrictions to that date.

## STATEMENT OF THE CASE

On July 5, 2003, as he was leaving the airport after arriving at Bangkok, Thailand, agents of the United States set upon appellant Saifullah Paracha and threw him into a vehicle. He has been imprisoned ever since and his habeas corpus petition, 2004-cv-02022-PLF, has been pending for twelve years.

The government's case has become clear: Among Saifullah Paracha's several business interests was a TV studio. Believing that an interview with the late Osama bin Laden would be a commercial and journalistic coup,

Paracha approached bin Laden and dealt with with some of bin Laden's associates. Because of this unarmed non-combat activity, unrelated to anything military, the Department of Defense has for the last twelve years held Paracha at Guantanamo Bay, Cuba, as an "enemy combatant."

Parallel to and separate from this DoD action—the legality or wisdom of which is not involved in this appeal—the prison at Guantanamo Bay has taken on a political, symbolic, and metaphorical life of its own. A less secure location cannot be imaged. The expression "send him to Guantanamo" has entered the language as the equivalent of "lock him up and throw away the key," but the prison is a few hundred yards from the open sea and the base is surrounded on land by a hostile and non-cooperative regime.[1] The remoteness of the base and the secrecy surrounding the prisoners' intelligence dossiers have allowed members of Congress and others to assume that any prisoner still there is a dangerous terrorist, but in fact the remaining prisoners are a mixed lot: They range from a few who are accused of plotting the 9/11 attacks to several dozen who have been declared no threat but are still there only because they have no place to go.

The main source of the political meaning of Guantanamo is a series of legislative declarations that the prisoners are not legitimate military

---

[1] The recent resumption of diplomatic relations with Cuba emphasizes the need to free the executive branch from congressional interference in this area.

prisoners but are in fact guilty of terrorism and deserve the harshest of punishments.

On April 30, 2015, docket 401, Paracha moved for a summary judgment declaring that these legislative determinations of guilt are void as bills of attainder forbidden by Article I, Section 9, clause 3 of the U.S. Constitution. On January 15, 2016, Paracha updated that motion to include new bills of attainder and to drop out those that had expired.[2] On June 16, 2016, the District Court declined to address the merits of the bill of attainder argument and dismissed it on the theory that Paracha lacked standing. On July 29, 2016, docket 444, the District Court ruled under Rule 54(b) that the issue was separate from the remaining issues in Paracha's habeas corpus case and that this appeal could go forward without delaying the habeas petition, which is still pending.

---

[2] This superseded and replaced an earlier update filed on December 5, 2015, docket 413.

## SUMMARY OF THE ARGUMENT

This Circuit in the case *Foretich v. United States,* 351 F.3d 1198 (D.C. Cir. 2003) reaffirmed the well-established principle that "No Bill of Attainder or ex post fact Law shall be passed." Article I, Section 9, clause 3. That case explicitly rejected the theories about standing that led the district court to dismiss Paracha's motion to declare these bills of attainder[3] null and void.

## STANDING

Saifullah Paracha is a person aggrieved by the breach of the separation of powers under which the U.S. Congress has declared him and others to be terrorists. As such he has standing to have those declarations declared invalid. Any interested person has standing to challenge such a

---

[3] Bills of attainder that impose penalties less than death are technically "bills of pains and penalties":

> A bill of attainder is a legislative act which inflicts punishment without a judicial trial.
> If the punishment be less than death, the act is termed a bill of pains and penalties. Within the meaning of the Constitution, bills of attainder include bills of pains and penalties.

*Cummings v. the State of Missouri*, 71 U.S. (4 Wall.) 277, 323, 18 L.Ed. 356, (1866), per Justice Field; *Foretich v. United States,* 351 F.3d 1198, 1217 (D.C. Cir. 2003).

breach of the separation of powers.

## ARGUMENT

### I. THE POST-*LUJAN* RESTRICTION OF STANDING TO ONLY PLAINTIFFS WITH IMMEDIATE PERSONAL INTERESTS CONFERS STANDING ON ANYONE AGAINST WHOM THE GOVERNMENT HAS TAKEN ACTION.

Justice Scalia in *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992), declared that standing to sue in the Article III courts requires that the plaintiff's injury be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" 504 U.S. at 560. But Justice Scalia said in that very opinion that if the plaintiff is the object of the government action complained of, there is "ordinarily little question" that he or she has standing. 504 U.S. at 561-562. This Court followed that principle when it reversed denial of standing to a non-profit school to challenge forfeiture of some money taken from it. *United States v. Emor,* 785 F.3d 671 (D.C. Cir., 2015). Standing is self-evident for persons and entities against whom the government is taking action.

The *Lujan* criteria are that the plaintiff suffered a cognizable wrong, that it was caused by the defendant's action complained of, and that the courts can remedy the wrong. Appellant Paracha is not a concerned citizen seeking to set aside an allegedly bad regulation. He is not a defender of

wildlife concerned about the protection of an endangered species. He *is* an endangered *individual*, an individual endangered and materially harmed by the legislature usurping the power of the judiciary by declaring him a terrorist. He did not seek standing, standing was thrust upon him when he was attainted by Congress.

The honorable District Court erred in dismissing both Paracha's "confinement injury" and his "reputational injury." June 16, 2016, opinion 3. The District Court correctly notes that Paracha is held as an "enemy combatant." Enemy combatants are confined, released, and exchanged by the executive branch at the discretion of the executive branch, subject to the laws of war and the harsh laws of military necessity. The bills of attainder compromise, indeed abrogate, that confinement. We need not speculate as to exactly what privileges, such as paid labor, packages from home, etc., would be available if the enemy combatants were held as enemy combatants. The concrete, real, non-speculative injury is the nature of the confinement: Paracha is held as a war criminal, an enemy of humankind, not as the enemy combatant the executive has labeled him. This is the result of congressional determination of guilt and will be redressed by declaring those determinations invalid as bills of attainder. This is a "confinement" basis for standing even if addresses the reason for confinement rather than the

physical fact of confinement.[4]

The government's essential argument is that petitioner, as a possible enemy combatant who has not yet disproven his combatancy in a habeas corpus hearing, has no presently enforceable right to release, and therefore has no standing to object to the bills of attainder.

The cases striking down bills of attainder have never required that the complainant be deprived of an enforceable right or a protected liberty interest. In *United States v. Lovett,* 328 U.S. 303, 66 S. Ct. 1073, 90 L. Ed. 1252 (1946) the three government officials found "unfit" by the Dies Committee, which cut off their salaries by an appropriations rider, had no enforceable right to government employment. In *United States v. Brown,* 381 U.S. 437, 85 S. Ct. 1707, 14 L. Ed. 2d 484 (1965), Brown's conviction for serving as a union officer while a member of the Communist Party was overturned on bill of attainder grounds. Brown had no more enforceable right to be a union officer than any Guantanamo prisoner has to come to the United States.

---

[4] Paracha's choice to file his motion against his bills of attainder in his pending habeas corpus docket is a legitimate attempt to conserve judicial resources and does not open the door to questions about the scope of habeas. In *Davis v. U.S. Sentencing Commission,* 716 F.3d 660 (D.C. Cir. 2013) this Court rejected the idea of limiting prisoners to claims demanding immediate or accelerated release from confinement. Likewise, *Royce v. Hahn,* 151 F.3d 116, 118 (3d Cir. 1995).

As Dr. Foretich's case (*supra*) teaches, the main effect of bills of attainder is reputational injury. Ample evidence of reputational injury was before the lower court in the form of citations to remarks of foreign leaders and politicians such as: "If the U.S. refuses to take these people, why should we?" Thomas Silberhorn, member of the German Parliament, quoted May 29, 2009, *Washington Post*. These remarks are in the Appendix at 45-48. That is what gives petitioner standing. None of his disabilities as a person accused of combatancy diminish that standing.

The District Court's rejection of standing based on the reputational injury directly conflicts with *Foretich*.

## II. PARACHA'S OBJECTION TO BILLS OF ATTAINDER IS A SEPARATION OF POWERS ARGUMENT OF THE SORT THAT ALWAYS MAY BE RAISED BY AN AFFECTED INDIVIDUAL.

The Supreme Court recently considered whether a criminal defendant had standing to question whether prosecuting her under the federal statute banning chemical weapons interfered with the Tenth Amendment reservation of powers to the states. The criminal defendant was accused of using caustic substances to inflict minor burns on her husband's partner in adultery. She wanted to argue that the Tenth Amendment reserved to the states the prosecution of such a run-of-mill local and domestic offense. *Bond v. United States,* 564 U.S. 211, 131 S. Ct. 2355, 180 L. Ed. 2d 269 (2011).

The Court upheld her standing. Justice Kennedy, writing for the whole Court, explained:

> In the precedents of this Court, the claims of individuals—not of Government departments—have been the principal source of judicial decisions concerning separation of powers and checks and balances. For example, the requirement that a bill enacted by Congress be presented to the President for signature before it can become law gives the President a check over Congress' exercise of legislative power. See U.S. Const., Art. I, § 7. Yet individuals, too, are protected by the operations of separation of powers and checks and balances; and they are not disabled from relying on those principles in otherwise justiciable cases and controversies. In *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), it was an individual who successfully challenged the so-called legislative veto—a procedure that Congress used in an attempt to invalidate an executive determination without presenting the measure to the President. The procedure diminished the role of the Executive, but the challenger sought to protect not the prerogatives of the Presidency as such but rather his own right to avoid deportation under an invalid order. Chadha's challenge was sustained. A cardinal principle of separation of powers was vindicated at the insistence of an individual, indeed one who was not a citizen of the United States but who still was a person whose liberty was at risk.

*Bond v. United States,* 131 S. Ct. at 2365. This passage is followed by a string citation to at least six cases vindicating the rights of afflicted individuals to invoke separation of powers arguments.

This recent ruling confirms Paracha's right to relief. The specific case Justice Kennedy discussed, *INS v. Chadha,* 462 U.S. 919, 103 S. Ct. 2764, 77 L. Ed. 2d 317 (1983), dealt with a resolution by the House of Representatives requiring the deportation of named persons. The Court

stressed the invalidity of such unicameral action as a violation of the constitutional requirement that bills be passed by both houses and presented to the President. But Justice Powell, concurring, made clear that this was a bill of attainder. As such the persons affected had standing to defend the separation of powers:

> As the Court recognized in *United States v. Brown*, 381 U.S. 437, 442 (1965), "the Bill of Attainder Clause was intended not as a narrow, technical . . . prohibition, but rather as an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function, or more simply — trial by legislature." This Clause, and the separation-of-powers doctrine generally, reflect the Framers' concern that trial by a legislature lacks the safeguards necessary to prevent the abuse of power.

*INS v. Chadha* 462 U.S at 962. Thus Chadha, like Ms. Bond, had standing to protest against the breakdown of the constitutional allocation of authority. So does Paracha.

The prohibition of bills of attainder is basic to our separation of powers and the guarantee that we may suffer punishment only after a judicial proceeding. That is why it is in the original Constitution and is not an amendment. That is also why, like the privilege of the writ of habeas corpus (*Boumediene v. Bush*, 553 U.S. 723, 128 S. Ct. 2229, 171 L. Ed. 2d 41 (2008)) it is enforceable on behalf of the military prisoners at Guantanamo despite their otherwise limited rights. *Boumediene* held that 28 U.S.C. 2241(e) is powerless to suspend the writ of habeas corpus because

the founders meant the habeas corpus clause (Article I, Section 9, clause 2) as a incapacity of Congress, not merely as an objection a properly privileged litigant might raise. The bill of attainder clause immediately follows the habeas corpus clause and is made of the same stuff. It reflects the founders' same intention to do away with parliamentary powers they thought inconsistent with the divided and limited government they were creating.

*Zivotofsky v. Kerry,* ____U.S. ___, 135 S.Ct. 2076, 192 L. Ed. 2d 83 (2015) recently reaffirmed the importance of the judiciary striking down congressional attempts to dictate decisions the Constitution commits to the executive branch.

## III. IF READ TO STRIP THE COURTS OF JURISDICTION TO REVIEW THESE BILLS OF ATTAINDER, THE JURISDICTIONAL LIMITATIONS IN 28 U.S.C. 2241(e) WOULD BE INVALID.

Section 2. of Article III subjects the appellate jurisdiction of the Supreme Court to exceptions and regulation by Congress, and that raises an interesting ambiguity for that important Court: may the exceptions and regulations shut out certain cases altogether, or must they be only procedural? But Section 1. of Article III has no such ambiguity. It is "The judicial Power of the United States" that is vested in "such inferior Courts as the Congress may from time to time ordain and establish." Nothing suggests that this Court or the United States District Court for the District of

Columbia, once ordained and established, can have any part of the judicial power of the United States taken away from them. And the possibility that the Supreme Court's power to review Guantanamo cases may be subject to limits provides all the more reason that this Court and the District Court should discharge their full responsibilities to apply the judicial power of the United States in such cases.

For many years the authority of Professor Henry M. Hart, Jr., and his article *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic,* 66 Harvard L. Rev. 1362 (1953), convinced many commentators that Congress could shut off Article III courts from enforcing a specific constitutional claim by limiting their jurisdiction over a specific class of cases. Professor Hart's view was that the state courts are always available, and under the supremacy clause (Article VI, clause 2) these courts must enforce federal constitutional rights, so federal jurisdiction is not a necessity; therefore, he reasoned, jurisdiction of the federal courts may be limited in any way Congress decrees. But the Guantanamo jurisdiction-stripping statute, 28 U.S.C. 2241(e), purports to strip jurisdiction for the prisoners from any "court, justice, or judge," state or federal. So state court alternatives are not available to save the statute even under Professor Hart's theory.

*United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L. Ed. 519 (1872),

rejected congressional limits on jurisdiction when they have the effect of forcing specific results. In that case Congress attempted to force rejection of President Andrew Johnson's broad amnesties for supporters of the Confederacy. Here, Congress sought to prevent all forms of relief for anyone labeled an enemy combatant. *Boumediene, supra,* restored the right to habeas relief, and the rest of the jurisdiction-stripping in 28 U.S.C. 2241(e) must fail as well. It is a legislative attempt to dictate a negative result for any enemy combatant, however meritorious a given claim may be on the merits.

Equal protection and due process forbid shutting out named individuals, or members of a specific group, even if a given subject matter could be jurisdictionally precluded. See Barry Friedman, *A Different Dialogue: The Supreme Court, Congress and Federal Jurisdiction,* 85 Northwestern Univ. L. Rev. 1, 6 n. 27 (1990) and other commentators cited in Gordon G. Young, *A Critical Reassessment of the Case Law Bearing on Congress's Power to Restrict the Jurisdiction of the Lower Federal Courts*, 54 Maryland L. Rev. 132, 133 n. 4 (1995). So the ban in 28 U.S.C. 2241(e) must fail as legislation targeted at the rights of a specific group unable to protect itself in the political arena.

The Second Circuit in *Battaglia v. General Motors,* 169 F.2d 254 (2d Cir. 1948) dealt with the statutory claim of workers to be paid for their entire "portal-to-portal" time on the employer's premises, not only for the time

actually working. Congress had abolished that claim and the Second Circuit acknowledged that the abolition of the claim could include stripping the courts of jurisdiction to hear the claim. But if the claim had had constitutional protection, *Battaglia* said, then it could not have been barred from the federal courts. 169 F.2d at 257.

In *Bartlett v. Bowen,* 816 F.2d 695, 703-711, 259 U.S. App. D.C. 391 (D.C. Cir. 1987), opinion reinstated and rehearing en banc denied, 824 F.2d 1240 (D.C.Cir.1987), this Court agreed, over the dissent of Judge Bork, who admitted the Supreme Court precedents on jurisdiction-stripping are "not free from ambiguity," 816 F.2d at 711. *Bartlett* dealt with denial of Medicare reimbursement because the patient had moved from a Christian Science nursing home to one not affiliated with that faith. The government claimed the plaintiffs' constitutional challenge to this religious discrimination was barred from the courts by jurisdiction-stripping provisions of the Medicare Act. This Court discussed the constitutional issues at length because Judge Bork's dissent discussed them, and it was the majority's view that a jurisdiction-stripping statute may not strip the courts of authority to review a constitutional claim. 816 F.2d at 703-711.

Many commentators have taken the same view. "Congress cannot use its power to control jurisdiction to preclude constitutionally necessary remedies for the violation of constitutional rights." Richard H. Fallon, Jr.,

*Jurisdiction-Stripping Reconsidered*, 96 Virginia L. Rev. 1043, 1134 (2010). "There exists a due process right to an independent judicial determination of constitutional rights." Martin H. Redish and Curtis E. Woods, *Congressional Power to Control the Jurisdiction of Lower Federal Courts*, 124 U. Pennsylvania L. Rev. 45, 93 (1975). "The conclusion is . . . inescapable that Congress cannot withdraw federal jurisdiction to hear cases in which constitutional rights are at stake . . ." Theodore Eisenberg, *Congressional Authority to Restrict Lower Federal Court Jurisdiction*, 83 Yale L. J. 498, 532 (1974) (footnote omitted). Likewise, Robert N. Clinton, *A Mandatory View of Federal Court Jurisdiction*, 132 U. Pennsylvania L. Rev. 741 (1984).

And many commentators have read *Boumediene, supra,* the governing case allowing Guantanamo litigation, not only as a vindication of the habeas corpus suspension clause, but also as a vindication of this broader rule against jurisdiction-stripping when a claim is rooted in the Constitution. Fallon, *supra,* 1056-1063; Stephen I. Vladeck, Boumediene's *Quiet Theory: Access to the Courts and the Separation of Powers*, 84 Notre Dame L. Rev. 2107 (2009).

There is nothing new in this doctrine: "The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no

remedy for the violation of a vested legal right." Marshall. C.J., *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 163, 2 L. Ed. 60 (1803).

Thus, if 28 U.S.C. 2241(e) were to shut off jurisdiction to review the claim of Paracha that the legislative findings of guilt under which he labors are unconstitutional, it would itself be unconstitutional.

## IV. 28 U.S.C. 2241(e) NEED NOT AND MUST NOT BE READ TO STRIP THE COURTS OF POWER TO STRIKE DOWN THESE BILLS OF ATTAINDER.

The reason there is no clear Supreme Court endorsement of the above consensus that jurisdiction-stripping of a constitutional claim would itself be unconstitutional is that the Supreme Court has never found it necessary to write such a ruling; the Court follows the principle that jurisdiction-stripping statutes like 28 U.S.C. 2241(e) are to be read with caution, indeed with any plausible interpretation that allows avoidance of the ultimate constitutional question of whether the courts may be stripped of the power of constitutional review. *Johnson v. Robison,* 415 U.S. 361 (1974) is a leading modern case. *Johnson* dealt with the constitutionality of denying veterans' benefits to men who had served alternative service as conscientious objectors. The Court avoided reading the finality provisions in the veterans' benefits statute as stripping it of jurisdiction to review that issue. Such a reading was avoided because otherwise the Court would have to face "serious questions

concerning the constitutionality" of such a jurisdictional bar. 415 U.S. at 366. Likewise, *Weinberger v. Salfi,* 422 U.S. 749, 762 (1975)**;** *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 681 n.12 (1986)**;** and *Webster v. Doe*, 486 U.S. 592, 603 (1988). These cases all indicate that the Court will go to great lengths to avoid reading a statute as attempting to shut off constitutional review.

This Court in *Bartlett v. Bowen,* 816 F.2d 695, 259 U.S. App. D.C. 391 (D.C. Cir. 1987), discussed above, said, "This foreboding line of Supreme Court cases and the ominous warnings of scholarly commentators have moved modern courts to apply the 'clear and convincing' standard" to claims that Congress has stripped the federal courts of jurisdiction over any constitutional issue. Such jurisdiction-stripping would lead us into a "constitutional morass" and the courts must avoid it if at all possible. 816 F.2d at 700. This Court admitted that one part of the Medicare statute stripped it of jurisdiction and held that part invalid, as discussed above, but still exercised great caution and construed another part as not clearly and convincingly stripping jurisdiction. 816 F.2d at 700.

When a person rightly or wrongly determined to be an enemy combatant brings a bill of attainder to the courts' attention, he is not complaining of any "aspect of [his] detention, transfer, treatment, trial, or

conditions of confinement," as disallowed by 28 U.S.C. 2241(e). He is pointing out a breach of the separation of powers, a rupture in the fabric of the Constitution, and the language of the statute does not bar his claim.[5]

## V. THE CHALLENGED STATUTES ARE VOID AS BILLS OF ATTAINDER.

The government has relied on the brief statement in *Kiyemba v. Obama*, 605 F.3d 1046, 1048 (D.C. Cir. 2010) (*Kiyemba III*) that the congressional restrictions are not bills of attainder. Judge Rogers' concurrence in that case shows what inadequate support for the bills of attainder that brief statement provides. The petitioners in *Kiyemba* had already been released or offered release. Judge Rogers was right to chide her colleagues for speaking over-broadly in what was essentially a moot case,

---

[5] There are other reasons for not applying the jurisdiction-striping statute to bar this bill of attainder claim. 28 U.S.C. 2241(e)(2), barring "any other action," is not severable from the habeas-barring section, section 2241(e)(1), which was struck down in *Boumediene*. Cf. the ruling of this Court, *Bismullah v. Gates,* 551 F.3d 1068 (D.C. Cir. 2009), that the direct appeals from the Combatant Status Review Tribunals to the D.C. Circuit are not severable from that key provision and could not take place after *Boumediene.* The operative language in *Boumediene* spoke of striking down "2241(e)" and not (e)(1) only. 553 U.S. 723, 733. And 2241(e)(2) refers to "paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note)," which was enacted at 119 Stat. 2739, 2741-2743, and was eviscerated by *Bismullah, supra,* and partially repealed by 123 Stat. 2612 and 124 Stat. 4374.

and in footnote 6 of her concurrence she specifically declared unnecessary the dicta about the bills of attainder. 605 F.3d at 1052.

The relevant teaching on bills of attainder is this Court's opinion in *Foretich v. United States,* 351 F.3d 1198 (D.C. Cir. 2003), a case which controls this case and answers every argument the government can marshal against striking down the Guantanamo bills of attainder.

*Foretich* was the notorious custody battle where Congress, believing Dr. Foretich guilty of molestation, had intervened to strip the D.C. Superior Court of jurisdiction to enforce his custody rights. The jurisdiction-stripping statute did not mention Dr. Foretich by name but targeted a narrow class of custody cases of which his was the only likely example. This Court explained that a bill of attainder is a legislative act aimed at a specific person or group of persons and imposing punishment upon them. 351 F.3d at 1217. "[T]he principal touchstone of a bill of attainder is punishment." 351 F.3d at 1218. We know when an enactment is punitive because of 1) the historical meaning of the burden imposed, 2) the tendency to go beyond what is necessary to accomplish non-punitive purposes, and 3) a legislative record showing an "intent to punish." 351 F.3d at 1218. These are not separate criteria each of which must be satisfied; they are indicia to be "weighed together." 351 F.3d at 1218. This Court has said that incarceration is not essential: "our inquiry is not ended by the determination that the Act

imposes no punishment traditionally judged to be prohibited by the Bill of Attainder Clause," *Foretich,* 351 F.3d at 1220, quoting *Nixon v. GSA,* 433 U.S. 425, 475 (1977).

Nevertheless, the congressional enactments Paracha challenges do meet all three criteria for punishment: they speak in terms of confinement, a traditional form of punishment; they impose terms of confinement in a manner inconsistent with wartime tradition or any other non-punitive rationale; and they were enacted professedly and explicitly to punish a group of individuals assumed by the legislators to be guilty of civil and military crimes for which they have not been charged.

The traditional form of punishment lies in the transformation from traditional military captivity in a barracks-like setting, under military discipline as required by the Geneva Conventions, to maximum security confinement with shackling, heavy surveillance, limited correspondence, etc.

The second criterion, whether the provision goes beyond anything necessary for non-punitive purposes, would suffice alone to make these restrictions into bills of attainder. The United States has waged war many times since its founding, and a survey of the Statutes at Large for the wartime years turns up nothing remotely resembling the congressional Guantanamo restrictions. Congress routinely appropriated funds for the executive to hold and feed enemy combatants. See the historical note in

support of the motion filed April 30, 2015, Appendix 24-25. When statutes mention the treatment, retention, or release of enemy combatants they invariably defer explicitly or implicitly to the executive's duty to make the actual decisions. E.g., the law of July 6, 1812, authorizing "the safe keeping, support and exchange of prisoners of war as he [the President] may deem expedient." 2 Stat. 777; joint resolution of December 11, 1861, in which Congress "requested" the President to "inaugurate systematic measures to the exchange of prisoners in the present rebellion." This legislative deference is especially significant during the Korean conflict, when truce negotiations stalled for more than two years, from June 28, 1951 to July 27, 1953, over the question whether prisoners would be allowed to choose not to be repatriated. During all that time, when public attention was riveted on the large number of Chinese and North Koreans who did not want to return to their impoverished and oppressed homes, and on the handful of Americans who wanted to stay in China or North Korea, Congress never interfered with the executive's responsibility to deal with the problem. See 64 Stat. (1950) through 68 Stat. (1954).[6]

---

[6] One of the defects of the Articles of Confederation was the lack of separation of powers, and the Continental Congress did involve itself in prisoner exchanges. See, as an example of one such intrusion, the incident mentioned in *Boumediene,* 553 U.S. 723, 747-748. The bills of attainder

In World War II, when much of Europe was overrun with a criminal regime and America was fully engaged in the struggle against it, several hundred thousand of the captured soldiers of that regime were housed in camps throughout the United States. Many of them were allowed to work in agriculture and other industries not directly related to the war effort. Arnold Krammer, *Nazi Prisoners of War in America* (New York: Stein & Day, 1979); Wikipedia, "German prisoners of war in the United States." The exclusion of the Guantanamo prisoners from the continental United States is in itself a punitive excess hurtful to all of them because it makes them anonymous and obscure—out of sight and out of mind, the worst form of reputational injury—and is especially hurtful to Paracha because of his network of relatives and friends in the United States who would visit and otherwise help him if he were accessible. Affidavit of Imran Paracha, filed in support of the April 30, 2015, motion, Appendix 16-18.

The third criterion, legislative intent to punish, is clinched by the numerous explicit statements by members of Congress to that effect. E.g.: Senator Tom Cotton (R., Ark.): "As far as I'm concerned, every last one of them [the Guantanamo prisoners] can rot in hell. But as long as they don't do that, then they can rot in Guantanamo Bay." Senate Armed Services

---

attacked in this appeal have revived this defect the Constitution supposedly put behind us.

Committee Hearing on the Guantanamo Detention Facility and the Future of U.S. Detention Policy, February 5, 2015, transcript 56:15-18. These statements were submitted to the lower court and are collected in the Appendix at 19-22 and 49-51. Those candid admissions of punitive intent reflect the belief of a majority of the legislators that each and every prisoner at Guantanamo is a continuing threat—even the 67-year-old pro-American Saifullah Paracha.

As Rep. Jerrold Nadler (D., N.Y.) correctly observed, "legislative bodies have no right to make such judgments about individuals." June 19, 2014, 160 Cong. R. H5518, Appendix 22. Before these congressional determinations of guilt passed, he declared that they "would be a violation of the bill of attainder section . . ." April 29, 2015, Cong. Rec. H2604, Appendix 51. Now that they are enacted and are inhibiting the normal course of executive activities, this court should likewise condemn them.

These arguments were urged on the District Court and may be found elaborated and expanded in Paracha's memoranda filed there.[7] When "the record permits only one resolution of the factual issue," remand is unnecessary, *Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*,

---

[7] Petitioner's motion, docket 401, filed April 30, 2015; petitioner's "Reply in Support of Petitioner's Motion for Summary Judgment," docket 407, filed June 12, 2015; petitioner's second supplement to his motion, docket 418; and petitioner's supplemental reply, docket 422.

827 F.3d 333, slip. op. 22 (4th Cir., July 1, 2016), quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982). *Semble, United States v. Dillon,* 738 F.3d 284, 297 (D.C. Cir. 2013); *United States v. McDade*, 699 F.3d 499, 505 (D.C. Cir. 2012). No remand is needed here. This record requires that this Court strike down the bills of attainder.

**RELIEF SOUGHT**

**WHEREFORE** petitioner asks that his motion of April 30, 2015, as updated and supplemented on January 15, 2016, be granted, and that all bills of attainder concerning the prisoners held at Guantanamo Bay, Cuba, be declared null and void, or, alternatively, that the matter be remanded to the District Court with instructions that petitioner does have standing to challenge those enactments.

Respectfully submitted,

___/s/_______________________________ December 19, 2016

GAILLARD T. HUNT
Attorney for Petitioner
(D.C. Bar No. 089375)
10705 Tenbrook Drive
Silver Spring, Maryland 20901
(Not admitted in Maryland)
301-530-2807
gthunt@mdo.net
(Fax: 301-564-6059)

CERTIFICATE OF COMPLIANCE, RULE 32(A)(7): Word reports that the text of this is 5886 words.



___/s/_____________________________ December 19, 2016

CERTIFICATE OF SERVICE

I, GAILLARD T. HUNT, attorney for petitioner, hereby certify that I served the within Brief on Michael Shih, Attorney, Civil Division, Appellate Staff, U.S. Department of Justice by mail and electronically by email to michael.shih@usdoj.gov, on December 20, 2016.



___/s/_____________________________ December 20, 2016

GAILLARD T. HUNT

Attorney for Petitioner